**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(a)

Benesch, Friedlander, Coplan & Aronoff LLP
Michael J. Barrie (NJ No. 033262000)
Kevin M. Capuzzi (NJ No. 173442015)
Continental Plaza II
411 Hackensack Ave., 3rd Floor
Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
kcapuzzi@beneschlaw.com

*Counsel to Pender East Credit 1 REIT, L.L.C.*

| | |
|---|---|
| In re:<br><br>BLACK CREEK CONDOS LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 21-15192 (SLM)<br><br>Judge: Stacey L. Meisel |
| In re:<br><br>BLACK CREEK CONDOS 57593 LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 21-15193 (SLM)<br><br>Judge: Stacey L. Meisel |
| In re:<br><br>BLACK CREEK CONDOS 57592 LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 21-15194 (SLM)<br><br>Judge: Stacey L. Meisel |
| In re:<br><br>CAMP MONTE LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 21-15195 (SLM)<br><br>Judge: Stacey L. Meisel |

**OBJECTION OF PENDER EAST CREDIT 1 REIT, L.L.C. TO DEBTORS' PROPOSED**
**RETENTION OF STACK & STACK, LLC AS PROVIDER OF BROKER'S PRICE**
**OPINION FOR DEBTORS**

Pender East Credit 1 REIT, L.L.C. ("Lender"), by and through its undersigned counsel, hereby objects (this "Objection") to the Debtors' *Application for Retention of Professional[1]* to retain Stack & Stack, LLC ("S&S") as debtors' realtor / provider of a Broker's Price Opinion (the "Appraisal Application"). In support of this Objection, Lender states as follows:

## PRELIMINARY STATEMENT

1.      The Debtors own several pieces of real estate that were financed through a loan provided by Lender.[2] As security for that loan, the Debtors granted Lender a security interest in substantially all of the Debtors' property, including the real property and related rents.

2.      Under New Jersey law, the assignment of rents is not a security interest but actually transfers the title of the rents to Lender. Therefore, as set forth in more detail in Lender's motion for adequate protection,[3] the Debtors do not appear to have any income (as any rents generated by the real property are property of Lender and not property of the estates).

3.      Debtors have also failed to reach an agreement with Lender regarding Debtors' ongoing use of Lender's collateral and adequate protection of Lender's interest in such property.

4.      In short, the Debtors do not have any income and have failed to provide adequate protection to justify their ongoing use of Lender's collateral (which is substantially all assets of the Debtors).

---

[1]     A joint administration order has not yet been entered in these cases (a motion for joint administration was filed on July 16, 2021) but an identical application was filed in all cases: Black Creek Condos (Docket No. 22); BC 57592 (Docket No. 22); BC 57593 (Docket No. 22); and Camp Monte (Docket No. 27).

[2]     At least one parcel was purchased with the proceeds of the loan from Lender, with the remainder of the proceeds being used primarily to refinance existing debt secured by the real property.

[3]     Specifically, that certain *Motion of Pender East Credit 1 REIT, L.L.C. for Adequate Protection Pursuant to 11 U.S.C. §§ 361 and 363(e) and to Enforce Assignment of Rents*, filed on July 1, 2021 in all cases (including at Docket No. 11 in the Black Creek case). The exhibits to that motion set forth the basis for Lender's security interest and the perfection thereof and such documents and arguments are hereby incorporated by reference.

5.      It is with this contextual background that Lender objects to the planned retention of S&S to provide an appraisal or value opinion on Lender's collateral.

6.      Although Lender does not question the disinterestedness of these professionals or their skills, Lender questions (i) how the apparently administratively insolvent Debtors will pay such professionals and (ii) the business justification for engaging S&S to appraise the value of Debtors' real property.

## BACKGROUND[4]

7.      On June 25, 2021 (the "Petition Date"), each of Black Creek Condos LLC, a New Jersey limited liability company ("Black Creek"); Black Creek Condos 57592 LLC, a New Jersey limited liability company ("BC 57592"); Black Creek Condos 57593 LLC, a New Jersey limited liability company ("BC 57593"); Camp Monte LLC, a New Jersey limited liability company ("Camp Monte;" collectively with Black Creek, BC 57592, and BC 57593, the "Debtors" and each, a "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing these chapter 11 cases.[5]

8.      The Debtors own several parcels of real property (the "Real Property"). The Debtors' primary source of income is rental income generated from the Real Property.

9.      Prior to the Petition Date, Lender made a $2.8 million loan to the Debtors that is secured by substantially all of the assets of the Debtors. The security package granted to Lender includes an assignment of rents, which, under New Jersey law, acts as a transfer of title to the rents generated by the Debtors' real property. *See First Fidelity Bank, N.A. v. Jason Realty, L.P.*

---

[4]      Lender previously raised a similar objection to the Debtors' application to retain accountants in these cases. *See* Black Creek Docket No. 21. The Background section of this Objection is substantially similar to the background section of that objection and the arguments set forth therein are hereby incorporated by reference.

[5]      No joint administration order has yet been entered. Thus, this Objection is being filed in each case.

*(In re Jason Realty, L.P.)*, 59 F.3d 423, 427 (3d Cir. 1995) ("It is settled in New Jersey that an assignment of rents passes title to the assignee.").

10.     Prior to the Petition Date, multiple defaults occurred under the loan documents between Lender and the Debtors. Lender sought to enforce its rights under the loan documents, and a Final Judgment of Foreclosure, together with a Writ of Execution, was entered against the Debtors on June 26, 2020.

11.     In addition, a Final Judgment of Default was entered on February 4, 2021 against Debtors in the amount of $3,883,423.60. Once Lender began sending notices to tenants at the Debtors' real property holdings, the Debtors filed these bankruptcy cases.

12.     Upon information and belief, the Debtors continue to use the real property and other collateral. No agreement regarding adequate protection has been reached between Lender and Debtors.

13.     Upon information and belief, all income generated by the Debtors is from renting the Real Property.

## **OBJECTION**

14.     Lender has serious concerns about the administrative solvency of these cases. No schedules have yet been filed in the cases, so Lender lacks insight into the current liquidity situation of the Debtors.

15.     However, Lender knows that all income of the Debtors derived from the Real Property is Lender's property and not property of the estates, based on binding Third Circuit interpretation of New Jersey law.

16.     Without income or any evidence in the record regarding how administrative expenses are going to be funded, it is likely not prudent for the Debtors to begin accruing additional administrative expenses at this time, including additional professional fees.

17.     At a minimum, Lender reserves the right to object to the use of its collateral (or, in the case of rental income, its property) to pay for any administrative expenses, including those incurred under the Appraisal Application

I.     **The Debtors Have Not Demonstrated a Need for a Broker's Value Opinion, and Absent Additional Information, the Appraisal Application Should be Denied**

18.     11 U.S.C. § 327(a) permits a debtor-in-possession to retain a disinterested realtor to the extent necessary to assist the debtor in administering the estate. Courts typically view the requirements of section 327(a) as being two-fold: first, the professional must demonstrate that it is disinterested and not holding an adverse interest to the estates and second, the professional must be necessary or helpful to the administration of the estate. *See In re Metropolitan Hosp.*, 119 B.R. 910, 920 (Bankr. M.D. Penn. 1990) (describing the "requirements of disinterestedness and necessity found in section 327(a)").

19.     Part of the "necessity" analysis under section 327(a) is driven by the Bankruptcy Court's role as a gatekeeper for administrative expenses, protecting the estate and creditors from unnecessary professional fees. *In re Sound Radio, Inc.*, 145 B.R. 193, 202 (Bankr. D.N.J. 1992) ("The purpose of the rule requiring court approval of employment is to enable the court to control administrative expenses. . . ."); *In re Vettori*, 217 B.R. 242, 244-45 (Bankr. N.D. Ill. 1998) (collecting cases for the proposition that professional retention should only be approved to the extent "the appointment will aid in the administration of the proceeding.").

20.     In short, although courts typically respect the business judgment of debtors when it comes to retention of professionals, there must be *some* basis for the need to retain a professional, particularly where administrative insolvency is a risk.

21.     Here, there is no clear need to engage S&S; indeed, the Appraisal Application provides no real explanation for why the engagement is necessary.  S&S is not being engaged to market the Real Property or otherwise facilitate a sale process. Instead, the Appraisal Application states that S&S will be engaged to "prepare a Broker's Price Opinion of its real property."

22.     The Appraisal Application does not explain why a price opinion is necessary - is it to facilitate a sale process? Is it because the Debtors are seeking alternative financing sources that will require a price opinion? Without additional information in the record, it is impossible to determine whether the retention of S&S is necessary or helpful.

23.     Given the risk of administrative insolvency in these cases, the need to scrutinize professional expenditures is heightened.[6] Absent a clear indication of how S&S will be compensated and the purpose of the engagement, the Debtors have not met their burden to demonstrate the benefits and business justification of S&S's engagement.

24.     Lender's concerns are amplified by the fact that (i) it has not seen any schedules yet to fully understand the Debtors' financial situation and (ii) S&S's engagement letter has not been provided, so parties-in-interest are unable to fully understand the proposed scope of work or other terms and conditions of the S&S engagement.

---

[6]     As part of ongoing discussions regarding a cash collateral budget, Debtors' counsel has asserted that S&S's fees are being paid by a third party non-debtor. However, no disclosure of that fact has yet been filed with the Court and Lender reserves the right to object to the Appraisal Application based on any conflict created by a third party paying the fees of S&S.

25. Given this lack of information, lack of funds, and no clear basis establishing the need for accountants at this stage of the cases, Lender believes that the Accountant Application should be denied or, at a minimum, adjourned until additional information is provided.

## II. Retention of S&S Should Not Affect Lender's Collateral or Prejudice Its Position

26. To be clear, Lender raises zero questions or concerns regarding S&S's abilities to provide a value opinion to the Debtors.

27. Instead, Lender is concerned whether funds are available to compensate S&S and the necessity of the engagement, and therefore Lender hereby reserves its rights related to its collateral and interest in the rental income generated by the Real Property.

28. Lender has not reached any agreement with Debtors regarding adequate protection and has not consented to any carveout to protect the estates from administrative insolvency. Thus, Lender hereby reserves the right to object to any payments to S&S made prior to the date that Lender's secured claim is paid in full.

## Conclusion

WHEREFORE, for the reasons set forth herein, Lender respectfully requests that the Court sustain this Objection and deny approval of the Appraisal Application and grant such other and further relief as is just and proper.

Dated:  July 21, 2021                    Respectfully submitted,

BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP

  _/s/ Kevin M. Capuzzi_
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
Michael J. Barrie (NJ No. 033262000)
Kevin M. Capuzzi (NJ No. 173442015)
Continental Plaza II
411 Hackensack Ave., 3rd Floor

Hackensack, NJ 07601-6323
Telephone: (302) 442-7010
Facsimile: (302) 442-7012
mbarrie@beneschlaw.com
kcapuzzi@beneschlaw.com

*Counsel for Pender East Credit 1 REIT, L.L.C.*